UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| GUNTER HEIDIG, *et al.*, | Case No. 3:16-cv-00576-MMD-VPC |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| PNC BANK N.A. C/O TRUSTEES CORPS, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Before the Court is Defendants'[1] Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion").[2] (ECF No. 16.) The Court has reviewed Plaintiffs' response (ECF No. 26) and Defendants' reply (ECF No. 28).

Also before this Court is PNC's Motion for Leave to File Counterclaim ("Motion for Counterclaim") (ECF No. 36).[3]

---

[1]Defendants are Federal Home Loan Mortgage Corporation as Trustee for Securitized Trust Freddie Mac Multiclass Certificates, Series 3038 ("Freddie Mac"), Mortgage Electronic Registration Systems ("MERS") and PNC Bank, N.A. ("PNC"). The complaint actually named Defendant PNC as PNC Mortgage, A Division of PNC Bank, N.A. c/o Trustee Corps. Therefore, this Court treats "PNC Mortgage, A Division of PNC Bank, N.A. c/o Trustee Corps" as PNC solely. Moreover, it is unclear what the abbreviation "c/o" indicates about the relationship between PNC and Trustee Corps ("c/o" or "care of" is generally used for purposes of correspondence), although it appears that Trustee Corps was the trustee hired by PNC to foreclose upon Plaintiffs' home.

[2]In their response, Plaintiffs note that neither Trustee Corps nor Soma Financial joined in Defendant's Motion. (ECF No. 26 at 1, n. 1.) SOMA Financial was never served in this case (and thus was dismissed) (ECF No. 62). As noted *supra* n.1, Trustee Corps is not identified as a separate defendant from PNC and is therefore not a proper defendant.

[3]The Court need not review Plaintiffs' response (ECF No. 38) and Defendants' reply (ECF No. 39) as the Motion is granted, rendering the Motion for Counterclaim moot.

For the reasons discussed below, the Motion is granted and the Motion for Counterclaim is denied as moot.

## II. BACKGROUND

The following facts are taken from the First Amended Complaint ("FAC"). (ECF No. 11.)

On August 12, 2005, Plaintiffs Gunter and Janis Heidig obtained a $258,000 mortgage loan from SOMA Financial ("SOMA") that was secured by a first mortgage/deed of trust ("DOT") on the property at 2655 Silky Sullivan Lane, Reno, Nevada ("the Property"). The DOT was recorded in Washoe County on August 18, 2005. This loan was then securitized, but Plaintiff alleges that the promissory note on the DOT ("the Note") was not properly transferred to Defendant Freddie Mac before the closing date under the PSA.[4] Generally, Plaintiffs allege that: any security interest in the Property was never perfected; the alleged holder of the Note is not the beneficiary of the DOT; the alleged holder of the DOT does not have requisite title, perfected security interest or standing to proceed in a foreclosure; and/or the holder of the DOT is not the real party in interest. Plaintiffs base these allegations on the theory that the security interest is invalid because there was a "splitting or separation of title, ownership and interest in Plaintiffs' Note and [DOT]" as well as errors in assignment of the DOT and a failure to assign and transfer the DOT to Freddie Mac in accordance with the PSA of Defendants, New York Law, and the Uniform Commercial Code. (ECF No. 11 at ¶ 29.) Plaintiffs claim that as a result no true sale occurred and none of the Defendants hold a perfected and secured claim in the Property, thereby estopping Defendants from foreclosing on their home.

Two notices of default have been recorded on the Property: one on May 31, 2013, and the other on December 24, 2014. The former was rescinded on December 24, 2014, and the latter was rescinded on October 14, 2015. Around December of 2013, Plaintiffs

---

[4]Plaintiffs fail to identify what the PSA is or who is a party to it. More generally, a "PSA" stands for a pooling and servicing agreement and is an agreement between an original lender and subsequent purchaser of a mortgage loan. *Wood v. Germann*, 331 P.3d 859, 859 (Nev. 2014) (per curiam).

received a second Notice of Default and Election to Sell by the Trustee for Defendants. In April 2015, there was a hearing before a state foreclosure mediator. The mediator denied a certificate of foreclosure. On judicial review, the mediator's findings were upheld. On March 4, 2016, Defendants' Trustee recorded a third Notice of Default and Election to Sell. On September 19, 2016, a Notice of Trustee Sale was recorded and the sale of the Property was scheduled for October 21, 2016.[5]

Plaintiffs allege nine claims for relief: (1) a cause of action under NRS § 107.028(7) for Defendants' non-compliance with NRS Chapter 107; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) slander of title; (5) quiet title; (6) declaratory relief that Defendants do not have authority to foreclose upon or sell the Property and that Plaintiffs are entitled to exclusive possession of the Property and own it in fee simple; (7) violation of the Real Estate Settlement Procedures Act ("RESPA"); (8) contractual breach of the implied covenant of good faith and fair dealing; and (9) tortious breach of the implied covenant of good faith and fair dealing.

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) In other words, "[f]actual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

---

[5] The Court granted Plaintiffs' Motion for a Temporary Restraining Order postponing the October 21, 2016, sale. (ECF No. 10.)

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. Moreover, a complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**IV.    MOTION TO DISMISS (ECF No. 16)**

   **A.    Judicial Notice**

Defendants request that this Court take judicial notice of certain documents in support of their Motion. (ECF No. 17.) These exhibits include: (1) the DOT for the Property that was recorded on August 18, 2005 (ECF No. 17-1); (2) Assignment of the DOT that was recorded on August 5, 2011 (ECF No. 17-2); (3) Assignment of the DOT that was recorded on February 25, 2015 (ECF No. 17-3); (4) Assignment of the DOT that was recorded on January 19, 2016 (ECF No. 17-4); (5) Notice of Default that was recorded on December 24, 2014 (ECF No. 17-5); (6) Petition for Judicial Review filed on June 5, 2015 in the Second Judicial District Court of the State of Nevada (ECF No. 17-6); (7) Rescission of the Notice of Default, which was recorded on October 14, 2015 (ECF No. 17-7); and

(8) Notice of Default that was recorded on March 4, 2016 (ECF No. 17-8). In their response, Plaintiffs do not dispute the authenticity of these documents. The Court therefore grants Defendants' request to take judicial notice of these documents.

### B. Claims Based on a Theory of Improper Securitization and Improper Assignment[6]

In their Motion, Defendants contend that Plaintiffs do not have standing to challenge any errors in assignment of the DOT. The Court agrees.

The improper securitization and assignment argument advanced by Plaintiffs is not legally cognizable. "Since the securitization merely creates a separate contract, distinct from plaintiffs' debt obligations under the note and does not change the relationship of the parties in any way, plaintiffs' claims arising out of securitization fail." *Reyes v. GMAC Mortg. LLC*, No. 2:11-cv-00100-JCM-RJJ, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (internal quotation marks and citation omitted). "The securitization argument has been repeatedly rejected by this district because it does not alter or change the legal beneficiary's standing to enforce the deed of trust." *Beebe v. Fed. Nat. Mortg. Ass'n*, No. 2:13-cv-311-JCM-GWF, 2013 WL 3109787, at *2 (D. Nev. June 18, 2013). Moreover, it is "well-established that a third party lacks standing to raise a violation of the [PSA]." *Burd v. JP Morgan Chase*, No. 2:13-cv-337-JCM-PAL, 2013 WL 1787192, at *4 (D. Nev. Apr. 25, 2013) (internal alterations omitted); *Wood v. Germann*, 331 P.3d 859, 861 (Nev. 2014) ("the homeowner, who is neither a party to the PSA nor an intended third-party beneficiary, lacks standing to challenge the validity of [a] loan assignment").

Because Counts 4, 5, and 6 rely solely on a theory of improper securitization, these counts are dismissed.

///

---

[6]There is also a third theory challenging the assignments based on a "robo-signing" argument. (ECF No. 13 at ¶¶ 36-50.) However, the Ninth Circuit has affirmed that a borrower lacks standing to allege such an argument because the borrower does not suffer an injury from the robo-signing. *Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW, 2012 WL 3426278, at *6 (C. D. Cal. Aug. 13, 2012), *aff'd*, 561 F. App'x 611 (9th Cir. 2014).

## C. NRS § 107.028(7)

Plaintiffs' first claim is brought pursuant to NRS § 107.028(7). However, this provision applies only to trustees, and none of the actual defendants are alleged to be the trustee for the DOT[7] at the time either notice of trustee's sale was recorded.

Therefore, this claim is dismissed.

## D. Intentional and Negligent Infliction of Emotional Distress

In order to properly allege a claim for intentional infliction of emotional distress, Plaintiffs must allege that there was "extreme and outrageous conduct with the intention of, or reckless disregard for, causing emotional distress." *State v. Eighth Judicial Dist. Court ex rel. Cty. Of Clark*, 42 P.3d 233, 241 (2002). The purportedly "extreme and outrageous" conduct Defendants have engaged in is "fraudulently attempting to foreclose or claiming the right to foreclose on a property in which they have no right, title, or interest." (ECF No. 11 at ¶ 68.) However, the basis for Plaintiffs' contention that Defendants had no right to foreclose on the Property has been rejected by both this Court and the Nevada Supreme Court. *See* discussion *supra* at Sect. IV(B). Therefore, it is not extreme or outrageous as a matter of law.

In order to properly allege a claim for negligent infliction of emotional distress, Plaintiffs must show that the emotional harm they suffered was "reasonably foreseeable" as a result of Defendants' actions. *Crippens v. Sav-on Drug Stores*, 961 P.2d 761, 762-63 (Nev. 1998). However, Defendants' actions appear to be fraudulently claiming the right to foreclose on Plaintiffs' home. (*See* ECF No. 11 at ¶¶ 68, 73.) As noted, this conduct is not "extreme or outrageous" as a matter of law. *See Simon v. Bank of Am., N.A.*, No. 2:10-cv-00300-GMN-LRL, 2010 WL 2609436, at *12 (D. Nev. June 23, 2010) ("[an allegation of unlawful foreclosure process does not] amount to extreme and outrageous conduct . . . . Foreclosure, particularly where there is no legally sufficient claim that it was

---

[7]The trustee at the time of the foreclosure sales appears to have been Trustee Corps (*see* ECF Nos. 17-5, 17-7), who was not named as a proper defendant to this action. (The remaining Defendants were purported beneficiaries of the DOT at various points in time.)

wrongful, is insufficient to amount to an actionable claim for [negligent infliction of emotional distress].")

Therefore, the Court dismisses Counts 2 and 3.

**E.   RESPA**

In Count 7, Plaintiffs allege that Trustee Corps violated RESPA by failing to acknowledge receipt of a qualified written request or investigate and respond to the request within the statutory time period. (ECF No. 11 at ¶ 99.)

As this claim is against Trustee Corps, who is not a proper defendant to this action, it is dismissed without prejudice.

**F.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs bring two claims for breach of the implied covenant of good faith and fair dealing, one sounding in tort and the other in contract. (ECF No. 11 at 20-21.) A party may be liable for a contractual breach of the implied covenant of good faith and fair dealing if that party "deliberately countervenes [sic] the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods.*, 808 P.2d 919, 922-23 (Nev. 1991). The contract that Plaintiffs appear to identify in Count 8 is the promissory note. However, according to their own allegations, Plaintiffs entered into the promissory note with SOMA, and on Plaintiffs' allegations the Note was never properly securitized or assigned to the various Defendants in this case. (ECF No. 11 at ¶¶ 10, 14-16.) Thus, it is unclear how any of the Defendants may have breached the Note when Plaintiffs argue that Defendants are not actual parties to it. Moreover, because Plaintiffs breached the promissory note first by ceasing to make payments on their mortgage loan,[8] they cannot maintain an action against Defendants based on a failure to perform consistent with the spirit of the promissory note. *See Harfouche v. Wehbe*, No. 2:13-cv-00615-LDG-NJK, 2016 WL 1047354, at *2 (citing *Bradley v. Nev.-Cal.-Or. Ry.*, 178 P. 906, 908-09 (Nev. 1919)).

///

---

[8]Plaintiffs have allegedly been in default since October 2011. (*See* ECF No. 36-1 at ¶ 17.)

"[A] tort action for breach of the implied covenant of good faith and fair dealing requires a special element of reliance or fiduciary duty . . . and is limited to rare and exceptional cases." *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) (internal quotation marks and citations omitted). A special element of reliance arises in such relationships as partnerships, insurance, and franchise agreements. *Ins. Co. of the W. v. Gibson Title Co.*, 134 P.3d 698, 702 (Nev. 2006) (en banc). In the FAC, Plaintiffs do not allege that they had a fiduciary relationship with any of the defendants; instead, they contend that they had a "justified expectation that their note and deed of trust would be handled, transferred and assigned in appropriate and lawful manners" and that "Defendants were in a superior position to Plaintiffs." (ECF No. 11 at ¶¶ 106-107.) However, these allegations do not demonstrate a "special element of reliance" between Plaintiffs and Defendants and appear to be based on the theory of improper securitization and assignment, which the Court has previously stated is not a legally cognizable argument that is available to Plaintiffs. To the extent Plaintiffs rely on a special relationship between borrowers and lenders, no such special relationship exists. *See Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 883-84 (9th Cir. 2007)) ("Although Plaintiffs contend that a special relationship existed because . . .they trusted Defendants' superior knowledge, those circumstances do not amount to more than an arm's length transaction.").

Therefore, Counts 8 and 9 are dismissed.

**G.     Punitive Damages**

Because the Court dismisses all of Plaintiffs' claims, the Court need not address the punitive damages allegations or Defendants' arguments regarding punitive damages.

**V.     MOTION FOR COUNTERCLAIM (ECF No. 36)**

Because the Court dismisses all of Plaintiffs' claims, the Motion for Leave to File Counterclaim is denied as moot.

///

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of motions before the Court.

It is therefore ordered that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 16) is granted. Dismissal is with prejudice except as to Plaintiffs' RESPA claim. Defendants' Motion for Leave to File Counterclaim (ECF No. 36) is denied as moot.

The Clerk is directed to close this case.

DATED THIS 15th day of September 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE